### A09A1813. TOLBERT v. THE STATE.

(684 SE2d 120)

ELLINGTON, Judge.

A Clayton County jury found Trevor Dior Tolbert guilty of armed robbery, OCGA § 16-8-41; and aggravated assault, OCGA § 16-5-21. Tolbert appeals, contending that the trial court erred in denying his motion to suppress incriminating statements made during an allegedly illegal arrest and in denying his motion for a new trial based on juror misconduct. Finding no error, we affirm.

1. Tolbert contends the trial court erred in refusing to suppress his incriminating statements because those statements were made during an illegal arrest. Tolbert further contends that the detectives arrested him without probable cause when, during their investigation into a string of armed robbery attempts, they asked Tolbert to go to the police station to answer some questions and drove him to the station in the back of an unmarked police car. Tolbert also contends that an inculpatory statement he gave at the police station, after being advised of his rights to silence and to counsel, was inadmissible because the statement followed that illegal arrest.

> Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence,

we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.

(Citations omitted.) *State v. Tousley*, 271 Ga. App. 874, 874 (611 SE2d 139) (2005).

Viewed in the light most favorable to the trial court's findings, the record shows the following. In three separate incidents on May 12, 2006, two men in a burgundy Jeep Cherokee attempted to rob bank patrons, either by using a gun or by forcing the victims' cars off the road. The last victim was able to obtain the Jeep's tag number and reported to police that the Jeep had South Carolina tag 876NVR. Detectives from the Clayton County police department searched vehicle registration records and discovered that the Jeep was registered to a woman in Stockbridge. The detectives went to the current address on record and found the burgundy Jeep with Georgia tags in the driveway with the South Carolina tag lying in the back seat. The Jeep's owner answered the door and told the detectives that Tolbert, her boyfriend, was a driver of the Jeep.

The officers asked Tolbert, who was there, to accompany them to the Clayton County Police Department to answer a few questions. Tolbert asked whether he was under arrest and a detective told him that he was not. Due to officer safety reasons, Tolbert rode to the police station in the back seat of the detective's unmarked police car, seated next to another detective. Tolbert's girlfriend followed the detective's car to bring him home after the interview. Tolbert did not ask to ride to the station with his girlfriend, was not handcuffed, and did not protest about riding in the police vehicle.

After arriving at the police station, the detective asked Tolbert to have a seat in an unlocked interview room, and again informed him that he was not under arrest. Before the detectives interviewed Tolbert, they gave him his *Miranda* warnings. Tolbert voluntarily signed a *Miranda* waiver in the presence of the detectives. During the interview, Tolbert was free to move about and was permitted to leave the room for smoke and bathroom breaks. During the interview process, Tolbert admitted he was the only male who drove the Jeep on the day of the incidents and he was picked out of a photographic lineup by a witness. After Tolbert's admission and subsequent identification by a witness, the detective placed him under arrest.

Tolbert argues that his illegal arrest occurred when he was confined in the police car with the two detectives, and as a result, the incriminating statements made during his interview should have been excluded at trial. "The test for determining whether a person is

'in custody' is if a reasonable person in the suspect's position would have thought the detention would not be temporary." (Citation and punctuation omitted.) *Scretchen v. State*, 192 Ga. App. 436, 437 (1) (385 SE2d 115) (1989).

The record does not support Tolbert's arguments. Instead, it reveals that Tolbert did not ask to ride with his girlfriend, that he was not handcuffed, and that he did not protest about riding in the police vehicle. Further, after Tolbert reached the police station, he was again told he was not under arrest, was informed of his *Miranda* rights, and was allowed to move about freely in order to take multiple bathroom and smoke breaks. Tolbert was only formally arrested at the police station after he admitted to driving the Jeep on the day of the robberies and he was identified from a photographic lineup.

Here, it is clear that Tolbert was not under arrest when he accompanied the detectives to the police station because he did so voluntarily with the belief that, after his interview was over, he would be leaving with his girlfriend. Even though Tolbert accompanied the detectives to the station in their car, his freedom of movement was not restrained; he was not handcuffed, and he was free to request that the officers take him back to his girlfriend's residence or that they pull over and allow him to leave with her. At this point, no reasonable person in the suspect's position would have believed his detention was anything other than temporary because his movement was not restricted and he planned to leave after the interview. *Scretchen*, 192 Ga. App. at 437.

2. Tolbert contends the trial court erred in denying a mistrial because a sitting juror made improper statements about Tolbert's guilt before jury deliberations took place and that this subconsciously influenced the decisions of the other jurors. Tolbert further argues that the discharge of the juror in question was not an adequate remedy for the misconduct. We disagree and find that the trial court did not abuse its discretion in denying Tolbert's motion for a new trial.

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, we have also recognized that some irregularities are inconsequential. The decision whether to remove a juror from a panel lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.

(Citation omitted.) *Buckholts v. State*, 247 Ga. App. 697, 700 (3) (545

54

SE2d 99) (2001).

The record shows the following relevant facts. Following an afternoon of trial, the bailiff was approached by two jurors who informed her that some of the other jurors made statements concerning Tolbert's guilt, prior to jury deliberations. Juror One reported the statements, was placed under oath and testified that Juror Two stated "that guy had a partner and they did it together." Juror One was unsure if everyone heard the statement, but did acknowledge that there were comments in agreement, and she identified two of the other jurors whom she believed had made comments. Juror One stated that nothing she heard would affect her ability to be a fair or impartial juror. Juror Two denied making any disparaging remarks about Tolbert but did admit she said she "might know him from somewhere" but that she could not be sure. Juror Two did not believe anyone else heard her make the remark, but admitted it was possible that the woman sitting beside her could have heard. Juror Two also testified that she did not believe it would impact her ability to be a fair and impartial juror. Juror Three testified that she did not make any disparaging remarks about Tolbert, that she had not discussed anything with the other jurors, and that she could be a fair and impartial juror.

Following the jurors' testimony, defense counsel moved for a mistrial due to juror misconduct, which the trial court reserved ruling on. As a precautionary measure, the trial judge then asked the jurors individually, under oath, if they heard any inappropriate statements that were made about Tolbert or discussed anything prematurely. After questioning each juror and finding that each juror could remain fair and impartial, the trial court denied Tolbert's motion for a mistrial. Nevertheless, the court discharged Juror Two sua sponte, pursuant to OCGA § 15-12-172.[1] Juror Two was discharged by the trial court for her comments that she "might know" the defendant Tolbert, and because the trial court wanted to ensure that Tolbert received a fair trial. Defense counsel objected to the removal of Juror Two as an inadequate remedy to the prejudice against his client. Juror Two was replaced with an alternate juror and the trial continued.

Tolbert contends that the jurors' statements could have "subliminally" influenced a jury of his guilt before deliberations that would have removed his presumption of innocence. Tolbert further contends that discharging Juror Two was not an adequate cure for

___

[1] Pursuant to OCGA § 15-12-172 a trial court may replace a juror who "at any time, whether before or after final submission of the case to the jury, . . . dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause."

the misconduct because the testimony from Jurors One and Two was inconsistent, and could have deprived him of a fair and impartial jury trial.

The record before us discloses no basis upon which to conclude that the trial court abused its discretion in denying Tolbert's motion for a new trial on the grounds of juror misconduct. Whether juror misconduct results in a decision to remove a juror lies with the trial judge and is within his sound discretion. *Buckholts*, 274 Ga. App. at 700. Here, the trial judge thoroughly questioned each individual juror under oath about what he or she said or heard, and whether he or she had the ability to remain a fair and impartial juror and found that no misconduct occurred and that each juror could remain impartial. As such, Tolbert's argument that any of the comments made by Jurors Two and Three subliminally influenced any of the jury members is purely speculative. Dismissing Juror Two and replacing her with an alternate juror was an adequate remedy authorized by OCGA § 15-12-172 and did not deprive Tolbert of a fair trial. See *Payne v. State*, 290 Ga. App. 589, 593 (4) (660 SE2d 405) (2008) (affirming a trial court's decision to excuse a juror under OCGA § 15-12-172 when the judge was convinced that the juror's ability to be fair and impartial was impaired); *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 9, 2009 

*Patricia F. Angeli*, for appellant.
*Tracy G. Lawson, District Attorney, Anece Baxter White, Assistant District Attorney*, for appellee.