**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1439. SALLEE v. THE STATE.

MILLER, Judge.

Following a jury trial, Mark Thomas Sallee was convicted of one count of insurance fraud (OCGA § 33-1-9).[1] In an out-of-time appeal, Sallee appeals from the denial of his motion for new trial, contending that (1) insufficient evidence supported his conviction; (2) the trial court erred in denying his general and special demurrers and his plea in abatement; (3) there was a fatal variance in the evidence; (4) the trial court erred in denying his motion for a mistrial based on juror misconduct; (5) the trial court improperly commented on the evidence; (6) Sallee was selectively and vindictively prosecuted; (7) the trial court was biased; and (8) Sallee's trial counsel

---

[1] The jury acquitted Sallee of a second count of insurance fraud. Following his conviction, attorney Sallee was disbarred.

was ineffective. This Court discerns no error. For the reasons that follow, we affirm Sallee's conviction.

Viewed in the light most favorable to the conviction,[2] the evidence shows that from 1995 to 2005, home builder John David Grice was married to Kim Grice Pack. In 2005, Grice purchased a 25-acre lot in Cutcane Ridge subdivision in Mineral Bluff for development and subsequently conveyed Lot 5 ("the Property") to Pack. Pack obtained a loan from Home Bank and Grice built a house on the Property. Pack also obtained a builder's risk insurance policy on the Property from Zurich Assurance Company of America ("Zurich").

In 2006, after Grice and Pack divorced, Pack entered into a sales contract to sell the Property to Grice. On Friday, August 4, 2006, Pack sold the Property to Grice for $180,000. Pack paid off her Home Bank loan and earned a profit of approximately $15,000.[3] Grice financed the purchase with a new loan from Home Bank, but he did not obtain any insurance on the Property.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] On August 16, 2006, Home Bank issued a cancellation and satisfaction, noting that Pack's 2005 loan had been paid in full.

Attorney Michael Birchmore, representing Home Bank, handled the closing. At closing, Pack executed a warranty deed, Grice executed a security deed, and both Pack and Grice signed a settlement statement.

Two days later, on August 6, 2006, a fire on the Property destroyed the house. The next day, Grice told Birchmore about the fire and asked Birchmore to delay recording the deed because Grice did not have insurance on the Property. In a letter to Home Bank, Birchmore proposed recording the deed the following day and he sent the documents to be recorded on August 8. The deeds, however, were not filed and the original deed was lost. Shortly after the fire, Pack contacted Zurich to see if the fire was covered by her builder's risk policy but Zurich determined that Pack would not be able to file a claim since she had sold the Property prior to the fire.

Grice retained Sallee to represent him in a malpractice claim against Birchmore for failing to ensure that Grice had insurance on the property at the time of the sale. Grice told Sallee that he had executed a security deed and Pack had executed a warranty deed at the August 4, 2006 closing, and Pack had been paid approximately $15,000. Sallee ultimately decided not to pursue any claims against Birchmore, however, Sallee advised Grice to make a claim against Pack's insurance policy

3

because the closing had not been completed and the deed to the Property, showing that Grice was the owner, had not yet been recorded.

Grice and Sallee then approached Pack and told her that they had determined that because the deeds had not been filed, Pack could file an insurance claim on the Property. Grice offered Pack $5,000 for her part in filing the claim. In October 2007, Sallee submitted an insurance claim to Zurich on Pack's behalf.

In March 2008, Sallee filed a bad faith lawsuit against Zurich on Pack's behalf. Although Sallee knew that Pack had received approximately $15,000 at closing, he told Zurich that Pack had not been paid for the sale of the property.

In December 2008, Sallee sent Pack a proof of loss statement to be filed with Zurich, claiming a loss of approximately $118,000. Sallee told Pack that he had found a loophole, the insurance claim was a windfall, and she could collect "free money" because Birchmore had not handled the closing properly. On December 8, 2008, Pack signed the proof of loss statement and Sallee submitted the statement to Zurich.

Pack later told Grice that she wanted to drop the claim because she had lied. Nonetheless, in December 2008, Zurich issued a check for just under $118,000 to Pack and Sallee. Sallee never told Pack that he had received the check and Pack never signed the check. Sallee cashed the check but later returned approximately $77,000

4

to Zurich, saying that he could not disburse the funds. Sallee kept the remainder of the money, approximately $40,000, as his fee.

The jury found Sallee guilty on one count of insurance fraud based on the submission of Pack's proof of loss statement.

1. Sallee contends that the evidence was insufficient to convict him of insurance fraud because there was no evidence that he made any affirmative misrepresentations, it was a matter of public record that Pack no longer owned the property at the time of the fire, and the insurance company did not rely on any alleged misrepresentation when paying Pack's claim. We discern no error.

A person commits the crime of insurance fraud by making or aiding in the making of a false or fraudulent written statement or representation of any material fact or by filing a claim "for the purpose of procuring or attempting to procure the payment of any false or fraudulent claim or other benefit by an insurer[.]" OCGA § 33-1-9 (a). Furthermore, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Although "mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from

5

which one's participation in the criminal intent may be inferred." (Citations and punctuation omitted.) *McWhorter v. State*, 198 Ga. App. 493 (1) (402 SE2d 60) (1991).

Pack's interest in the property terminated when she sold it. See *Roach v. Ga. Farm Bureau Mu. Ins. Co.*, 173 Ga. App. 229, 230 (325 SE2d 797) (1984) (insured's interest in property terminates when property is sold). Nevertheless, Sallee approached Pack after the sale and encouraged her to file an insurance claim on the Property. Sallee knew that Pack's loan on the Property had been paid off on August 4, 2006 at the closing but nonetheless filed Pack's signed proof of loss statement with Zurich on December 8, 2008, in which she falsely claimed a loss of approximately $118,000 under her insurance policy.

While Sallee argues that there was no insurance fraud because an employee of Zurich testified that Zurich did not rely on Sallee's misrepresentations when it paid Pack's claim,[4] reliance is not an element of criminal insurance fraud. "Rather, the State must prove that the defendant made a false statement for the purpose of procuring or attempting to procure payment of a false or fraudulent claim. Once a

---

[4] A Zurich employee testified that the company "made a business decision" to pay Pack's claim because it was facing the bad faith lawsuit filed by Sallee.

defendant makes a false statement for such purpose, the crime is complete, and it is irrelevant whether or not the claim is subsequently paid." (Punctuation and footnote omitted.) *Callaway v. State*, 247 Ga. App. 310, 314 (1) (b) (542 SE2d 596) (2000). Thus, it matters not whether Zurich relied on Sallee's misrepresentation in deciding whether to pay Pack's claim. Given the evidence set forth above, a jury was authorized to conclude that Sallee aided Pack in making a false or fraudulent written statement for the purpose of procuring or attempting to procure the payment of a false claim, which was all that was required to convict Sallee of insurance fraud. See id.

2. Sallee contends that the trial court erred in denying his general and special demurrers. We discern no error.

> An accused may challenge the sufficiency of an indictment by filing a general or special demurrer. A general demurrer challenges the sufficiency of the *substance* of the indictment, whereas a special demurrer challenges the sufficiency of the *form* of the indictment. An indictment is sufficient to withstand a general demurrer if an accused would be guilty of the crime charged if the facts as alleged in the indictment are taken as true; however, if an accused can admit to all of the facts charged in the indictment and still be innocent of a crime, the indictment is insufficient and is subject to a general demurrer.
>
> An indictment is sufficient to withstand a special demurrer if it contains the elements of the offense intended to be charged, and sufficiently

7

apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citations and punctuation omitted.) *Raybon v. State*, 309 Ga. App. 365, 366 (710 SE2d 579) (2011). We review a trial court's ruling on a general or special demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient. See *State v. Marshall*, 304 Ga. App. 865 (698 SE2d 337) (2010); see also *State v. Corhen*, 306 Ga. App. 495, 501 (4) (700 SE2d 912) (2010).

As to Count 2, the indictment alleged that on December 8, 2008, in violation of OCGA § 33-1-9, Sallee, Grice and Pack, individually and as parties concerned in the commission of crime

> knowingly [made] and [aided] in the making of a fraudulent representation of material fact, to wit: Kim Grice [Pack] signed a Sworn Proof of Loss Statement claiming she had a loss of $117,849.82, a written statement, relating to a policy of insurance, for the purpose of procuring the payment of a fraudulent claim by Zurich Insurance Company[.]

(a) General demurrer.

8

Sallee contends that the indictment was defective because it failed to contain all of the essential elements of insurance fraud, specifically, the fraudulent representation of a material fact in violation of a specified penal statute. An indictment is sufficient if "it states the offense in the statutory language or so plainly that the nature of the offense may be understood by the jury and each of the named defendants would be guilty of the crime charged if the facts as alleged in the count are taken as true." *Corhen*, supra, 306 Ga. App. at 501 (4); see also OCGA § 17-7-54 (a).

Here the indictment specifically charged Sallee in Count 2 of violating OCGA § 33-1-9 and further indicated, tracking the statute's own language, that the fraudulent misrepresentation was Pack's statement that she had suffered a loss of $117,849.82. Sallee would be guilty of insurance fraud if the facts alleged in the indictment were taken as true. Accordingly, the indictment was sufficient to withstand a general demurrer.[5] See *State v. Horsley*, 310 Ga. App. 324, 325-326 (2) (714 SE2d 1) (2011) (reversing trial court's grant of general demurrer where indictment tracked the language of the applicable statute and plainly stated the allegations).

[5] For the same reason, we reject Sallee's contention that the trial court erred in denying his plea in abatement because the indictment failed to allege a fraudulent claim in violation of a specified penal statute.

9

(b) Special demurrer.

Sallee also contends that the trial court erred in denying his special demurrer because the indictment did not identify a particular fraudulent claim. The indictment specifically identified the fraudulent statement as Pack's December 8, 2008 proof of loss statement. The indictment was sufficient to withstand a special demurrer because it stated the elements of the offense, apprised Sallee of the charges against him so that he could prepare his defense, and protected Sallee against subsequent prosecutions for the same offense. See *State v. Marshall*, 304 Ga. App. 865, 866 (698 SE2d 337) (2010).

3. Sallee contends that there was a fatal variance in the evidence because the indictment alleged that Sallee assisted Pack in making a fraudulent representation when she signed the sworn proof of loss statement but the State argued at trial that Sallee committed insurance fraud when he failed to correct Pack's misstatement. We do not agree.

> Our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges

against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance "fatal."

(Citation omitted.) *Hernandez v. State*, 319 Ga. App. 876, 878 (1) (738 SE2d 701) (2013).

Here, as discussed above, the indictment adequately apprised Sallee of the charges against him, did not mislead him as to the charges he faced, and adequately set forth the allegations in a manner to protect him against subsequent prosecutions for the offense charged. See *Hernandez*, supra, 319 Ga. App. at 878 (1). Moreover, the evidence adduced at trial was sufficient to sustain his conviction and consistent with the allegations in the indictment. Specifically, the evidence showed that Sallee assisted Pack in making an affirmative fraudulent representation when she signed the sworn proof of loss statement claiming that she suffered a loss, when in fact she had not. Accordingly, Sallee has not shown that a variance in the evidence, if any, affected his substantial rights.

11

4. Sallee contends that the trial court erred in denying his motion for a mistrial based on juror misconduct.[6] We disagree.

"When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred. However, in order for juror misconduct to upset a jury verdict, it must have been so prejudicial that the verdict is deemed inherently lacking in due process." (Punctuation and footnotes omitted.) *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). "The decision whether to remove a juror from a panel lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." (Citation omitted.) *Tolbert v. State*, 300 Ga. App. 51, 53 (2) (684 SE2d 120) (2009). This Court also reviews the denial of a mistrial for abuse of discretion. *Watson v. State*, 289 Ga. 39, 42 (7) (709 SE2d 2) (2011).

---

[6] Sallee also contends that the trial court erred in not granting a mistrial based on the fact that Sallee's trial occurred before a local election, which Sallee argues improperly influenced the jury. Sallee does not specify how the upcoming local election affected the jury. Moreover, since Sallee did not seek a mistrial on this basis at trial, he has waived the issue. "Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Citation and punctuation omitted.) *Godfrey v. State*, 227 Ga. App. 576, 577 (2) (489 SE2d 364) (1997).

On the third day of Sallee's trial, Juror M., a local attorney, shared with a State's witness, another local attorney, his thoughts on the case. The trial court removed Juror M. from the jury and replaced him with an alternate. After individually questioning the other jurors, who said that they had not heard any comments and could remain fair and impartial, the trial court denied Sallee's motion for a mistrial.

Replacing the juror who committed misconduct and then individually polling the remaining jurors to ascertain that they could remain fair and impartial was an adequate remedy and did not deprive Sallee of a fair trial. See *Tolbert*, supra, 300 Ga. App. at 55 (2) ("Here, the trial judge thoroughly questioned each juror under oath about what he or she said or heard, and whether he or she had the ability to remain a fair and impartial juror and found that no [further] misconduct occurred and that each [remaining] juror could remain impartial."); see also OCGA § 15-12-172. Accordingly, Sallee has not shown error in the denial of his motion for mistrial.

5. Sallee contends that the trial court improperly commented on the evidence during Sallee's cross-examination in violation of OCGA § 17-8-57. We do not agree.

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the . . .

13

Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below[.]

OCGA § 17-8-57. However, "[t]o constitute an improper comment under OCGA § 17-8-57, the trial court's statement must express an opinion about a witness's credibility, whether the evidence has proven a material issue, or whether the defendant is guilty." (Citation and punctuation omitted.) *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006).

"A trial judge may propound questions to a witness to develop the truth of the case or to clarify testimony, and the extent of such an examination is a matter for the trial court's discretion." (Citations omitted.) *Finley v. State*, 286 Ga. 47, 51 (9) (a) (685 SE2d 258) (2009). Moreover, "[a] trial court's instruction to a defendant to give responsive answers does not indicate an opinion as to either the defendant's credibility or his guilt or innocence." (Citation omitted.) *Anthony*, supra, 282 Ga. App. at 458 (1).

During Sallee's cross-examination, the following exchange occurred:

STATE: Okay. Don't you have a duty as an attorney if there is a statement made to a third party that you later find out about, that you have got to correct that?

SALLEE: There's a duty if that is hidden. [The Birchmore] affidavit[7] was a public record made –

COURT: The question was, do you have a duty to correct a misstatement when you find out there has been a misstatement?

SALLEE: Not if it's a matter of public record.

COURT: That's not an answer to the question. Will you answer the question?

SALLEE: I cannot answer the question as posed. I have a duty –

COURT: You're saying you don't have a duty to correct something that you know that it's wrong?

SALLEE: No. That's not what I'm saying, your Honor.

COURT: What are you saying? That's the question to you. You are a lawyer. You found out there has been a misstatement. Don't you as an attorney have a duty to correct the misstatement?

SALLEE: I have a duty also to my client. I have a duty to my client. I did not feel that was a misstatement. I have a duty to my client. Zurich

---

[7] In October 2007, Birchmore prepared and recorded an affidavit setting forth the facts related to the closing and attaching a copy of the original warranty deed.

at that time had agreed to make the claim. It was a public record. I did not feel that it was a misstatement at that time.

Here, the trial court attempted to clarify Sallee's testimony as to whether he had a duty to correct a client's misstatement, and, in so doing, it did not express an opinion as to Sallee's guilt or credibility. See *Anthony*, supra, 282 Ga. App. at 458 (1) (no error where trial court directed defendant to answer the questions asked but expressed no opinion as to whether defendant's answers were truthful). Moreover, the trial court cautioned the jury explicitly that "[b]y no ruling or comment which the [trial court] has made during the progress of the trial has the [trial court] intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant." Under these circumstances, the trial court did not violate OCGA § 17-8-57. See *Ellis v. State*, 292 Ga. 276, 282 (3) (736 SE2d 412) (2013).

6. Sallee also contends that he was selectively and vindictively prosecuted because he had previously represented criminal defendants in Fannin County. We disagree.

> Whether to prosecute and what charge to bring before a grand jury are decisions that generally rest in the prosecutor's discretion. Nevertheless, selectivity in the enforcement of criminal laws is subject

16

to constitutional constraints, the equal protection clause of the Fourteenth Amendment, while the due process clause of the Fourteenth Amendment protects against vindictive exercise of the prosecutor's discretion. The conscious exercise of selectivity in enforcement is not a federal constitutional violation if the selection is not deliberately based upon unjustifiable standards, as race, religion or other arbitrary classification. Pursuit of a course of action designed to penalize one's reliance on a legal right is patently unconstitutional. For this reason, where there is actual or a realistic likelihood of vindictiveness in post trial proceedings, a presumption of prosecutorial vindictiveness is said to arise.

(Citations omitted.) *Lee v. State*, 177 Ga. App. 698, 700 (1) (340 SE2d 658) (1986). Here, both Pack and Grice were also charged with insurance fraud, although they both decided to testify truthfully in exchange for immunity. There is no evidence that Sallee was prosecuted based on his race, religion, or other arbitrary classification. Accordingly, there is no presumption of vindictive prosecution in this case. See *Lee*, supra, 177 Ga. App. 700 (1). Consequently, Sallee's claim fails.

7. Sallee also summarily contends that the trial court was biased. We disagree.

Prior to trial, all the judges of Fannin County Superior Court recused themselves to avoid any appearance of impropriety. The Honorable Hugh Stone, Senior Superior Court Judge, was assigned to try the case, and Sallee points to

17

nothing in the record as evidence of bias. Moreover, Sallee made no motion to recuse Judge Stone and did not seek a mistrial based on any alleged bias. Consequently, Sallee has failed to preserve this issue for appellate review. See *Works v. State*, 301 Ga. App. 108, 112 (3) (686 SE2d 863) (2009). "If [Sallee] was aware of a possible basis for recusal, he had no right to sit back, hope for a favorable ruling or sentencing, and then raise the issue for the first time in an amended motion for a new trial." (Footnote omitted.) *English v. State*, 290 Ga. App. 378, 381-382 (2) (659 SE2d 783) (2008).

8. Sallee also contends that his trial counsel rendered ineffective assistance.

> In order to prevail on a claim of ineffective assistance, [Sallee] must show that counsel's performance was deficient and that the deficient performance so prejudiced [Sallee] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Sallee] must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Hampton v. State*, 279 Ga. 625, 626-627 (619 SE2d 616) (2005). With these principles in mind, we turn to review Sallee's claims.

(a) Sallee contends that his trial counsel was deficient in failing to object to the trial court's instruction that the Birchmore affidavit was admitted for the purpose of showing Sallee's knowledge of the conveyance when the affidavit was a public record. We disagree.

The trial court instructed the jury, "Sometimes, things are admitted into evidence for a limited purpose, and [the Birchmore affidavit] is admitted into evidence on the question of the party's knowledge, if any, of the transfer of title by Kim Grice [Pack] to John David Grice. The affidavit itself does not convey and is not a conveyance of any interest in property." Here, Pack and Sallee testified that Sallee was aware at the time he submitted the proof of loss to Zurich that the Property had been conveyed to Grice prior to the fire. Consequently, even if trial counsel was deficient in failing to object, there is no reasonable likelihood that the jury's verdict would have been different had trial counsel objected to the limiting instruction.

(b) Sallee contends that his trial counsel was deficient in failing to object to the State's closing argument that Sallee should be convicted based on his failure to correct Pack's misstatement. We discern no error.

19

The trial court repeatedly instructed the jury that the attorneys' closing arguments were not evidence, and "qualified jurors under oath are presumed to follow the instructions of the trial court." *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004). Given the trial court's instruction, there is no reasonable probability that the verdict would have been different but for trial counsel's failure to object to the State's closing argument.

(c) Sallee contends that his trial counsel was deficient in failing to object to the State's questions during Sallee's cross-examination. We disagree.

Specifically, Sallee contends that trial counsel was ineffective in failing to object to the State's questions as to whether Sallee had a duty to refrain from counseling a client to engage in illegal conduct, whether Sallee had ever built a house, how many houses he owned, and whether he had ever had a fire. Here, the questions were not material and thus there is no reasonable probability that trial counsel's alleged deficiency impacted the verdict.

(d) Sallee also contends that his trial counsel was deficient in failing to object and move for a mistrial based on the trial court's questioning of Sallee regarding whether Sallee was obligated to correct a client's misstatement. As set forth above in Division 5, the trial court made no improper comment on the evidence. "The failure

20

to pursue a futile objection does not amount to ineffective assistance." *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). Therefore, trial counsel was not deficient in failing to object.

(e) Sallee contends that trial counsel was ineffective in failing to request a mistrial after the trial court admonished the jurors to pay attention to the proceedings and removed the county sheriff from the courtroom. We discern no error.

(i) During trial, outside the presence of the jury, the State alerted the trial court that the previously-discharged juror, Juror M., was sitting in the courtroom, making eye contact with and possibly communicating with a current juror, Juror G. The trial court instructed Juror M. not to communicate with or look toward the jury. The trial court also asked Juror M. to move to a different area of the courtroom and instructed the jury to pay attention to the testimony and not the audience. Later that day, outside the presence of the jury, the State asked the trial court to determine whether Juror M. had communicated with Juror G. The trial court then questioned Juror G., who denied any communication. Juror G. remained on the jury.

Here, the trial court questioned Juror G. and determined that there had been no juror misconduct. Thus, there was no necessity for a mistrial and a mistrial motion would have been meritless. See *Tolbert*, supra, 300 Ga. App. at 55 (2) (no mistrial

21

required where jurors could remain fair and impartial). "That counsel did not pursue a meritless motion cannot constitute a basis for a claim of ineffective assistance of counsel." (Citation omitted.) *Leonard v. State*, 292 Ga. 214, 217-218 (4) (735 SE2d 767) (2012).

(ii) After the trial court asked Juror M. to move to a different part of the courtroom, two sheriff deputies stood by him. Trial counsel then asked the trial court to remove the county sheriff from the courtroom because the sheriff had posted on Facebook that Sallee, who was representing a client in an action against the sheriff, was on trial for fraud. Outside of the jury's presence, the trial court asked the sheriff to leave the courtroom and the sheriff agreed to do so.

Here, the jury knew that Sallee was on trial for fraud. Moreover, Sallee has not shown that the fact that the sheriff left the courtroom had any affect on the jury or that but for counsel's alleged deficiency, the result of the trial would have been different.

(f) Sallee contends that trial counsel was ineffective in failing to subpoena the entire file from Zurich or interview Linda Meskis, a Zurich employee who had worked on Pack's claim. We disagree.

(i) At the hearing on Sallee's new trial motion, trial counsel testified that he did not subpoena the insurance file because he already had the file's contents.

22

Since trial counsel had the file, he could not have been deficient in failing to subpoena it.

(ii) As to Meskis, Sallee failed to make any proffer as to what Meskis would have testified. Therefore, it is impossible for him to show that there is a reasonable probability the results of the proceedings would have been different had trial counsel interviewed Meskis. See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) ("The failure of trial counsel to employ evidence cannot be deemed to be prejudicial in the absence of a showing that such evidence would have been relevant and favorable to the defendant.") (punctuation omitted).

(g) Sallee contends that trial counsel was ineffective in failing to request jury charges explaining the reasonable reliance element of fraud. As set forth in Division 1 above, reasonable reliance is not an element of criminal fraud. Accordingly, trial counsel could not have been ineffective for failing to request an incorrect statement of law. See *Leonard*, supra, 292 Ga. at 217-218 (4) (counsel not required to make meritless motions).

(h) Sallee also contends that trial counsel was ineffective in failing to request a jury charge that attorneys are not subject to a different standard in applying criminal laws. See *Pope v. State*, 179 Ga. App. 739, 743 (3) (347 SE2d 703) (1986) ("behavior

23

which might be unethical and might even subject an attorney to discipline by the State Bar does not necessarily rise to the level of criminal conduct"). Here, the jury was correctly instructed on the elements of insurance fraud and there is sufficient evidence to support Sallee's conviction for that crime. There were no special instructions required and Sallee cannot substantiate his claim that his trial counsel was ineffective.

For all of the stated reasons, this case is affirmed.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur*.