**SECOND DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 31, 2017**

# In the Court of Appeals of Georgia

A17A0455. KNOWLES v. THE STATE.                              DO-016 C

DOYLE, Chief Judge.

Barbara Knowles was convicted of making a false report of a crime[1] and three counts of making a false statement.[2] She appeals the denial of her motion for new trial, arguing that: (1) the evidence was insufficient to support her convictions; (2) the rule of lenity should have been applied to her convictions for making false statements; and (3) she received ineffective assistance of counsel. For the reasons that follow, we affirm Knowles's convictions, but vacate her sentences for making a false statement and remand for resentencing.

---

[1] OCGA § 16-10-26.

[2] OCGA § 16-10-20.

Knowles was tried along with co-defendants Kelly Marlow and Robert Trim, both of whom were convicted of two felony counts of making a false statement. All three defendants appealed. We affirmed Marlow's and Trim's convictions in *Marlow v. State*,[3] but vacated their sentences and remanded for resentencing. The relevant facts, as set forth in that opinion, follow:

> Viewed in the light most favorable to the verdict,[4] the record shows that on June 13, 2013, at approximately 11:00 p.m., a Canton police officer responded to a 911 call made by Barbara Knowles outside the Painted Pig restaurant in Canton. When he arrived, the officer spoke with Knowles, Marlow, and Trim, and [Knowles] advised that "they had left a school board meeting that was very heated, and when they crossed the two-lane, one way street between the crosswalk and the actual entrance of the restaurant, Cherokee County Schools Superintendent Frank Petruzielo came speeding by in an aggressive manner, and he came very close to them, and they felt threatened."[5]
>
> The officer took a report, but he advised the trio that he would not pursue an investigation or charges and that they could obtain a citizen warrant in magistrate court if they wished to further pursue the matter.

---

[3] 339 Ga. App. 790 (792 SE2d 712) (2016), cert. applied for.

[4] See *Short v. State*, 234 Ga. App. 633, 634 (507 SE2d 514) (1998).

[5] This conversation was the basis for Count 1, making a false report of a crime.

A police supervisor subsequently reviewed the incident report, and on June 14, 2013, he referred the matter to a detective for investigation. The detective contacted Knowles, Trim, and Marlow and asked them to provide written statements via email. [On June 23, 2013, Knowles emailed her written statement to the detective, and she went into the police station and signed it on July 2, 2013.[6] In the statement, Knowles advised that as she, Marlow, and Trim were crossing the street, "[they] turned and saw a white, BMW SUV accelerating and changing from the right lane to the left lane where they were crossing." According to her statement, Knowles was in front of Marlow and Trim, and Trim "had to push [Marlow] forward in order for them not to be hit by the driver of the SUV. The driver never slowed down. . . ." Knowles stated that [Petruzielo] was the driver of the BMW, and she called 911 and reported the incident because she "felt that [her] life had been in danger."]

. . .

On June 20, 2013, the detective obtained surveillance video from outside the Painted Pig at 10:40 p.m. on June 13, 2013.[7] According to the detective, the video shows Knowles "casually" walk across the street to the sidewalk without turning around and walk into the restaurant. Trim then reaches the sidewalk, followed by Marlow. The video does not show Trim pushing Marlow out of the way in the way [Knowles] described in [her] statement[]. It does depict Petruzielo driving past in

---

[6] Knowles's act of signing the written statement at the police department on July 2, 2013, is the basis for Count 3 of the indictment.

[7] The surveillance video was played for the jury at trial.

his vehicle.[8] The detective described the surveillance video as "inconsistent" with the accusations made by . . . Knowles[, Marlow, and Trim].

On July 2, 2013, Knowles[, Marlow, and Trim] met with police at the scene, and they gave recorded oral statements and re-enacted their version of the events involving Petruzielo, narrating as they did so.[9] Their statements essentially repeated their written statements, and according to the detective, their statements and re-enactment remained inconsistent with the video surveillance.[10]

As a result of the investigation, Knowles was charged with one count of making a false report of a crime (Count 1) and three counts of making a false statement (Counts 2-4). The trial court granted a directed verdict as to

---

[8] At trial, the State introduced the testimony of the police officer who worked in the intelligence division of the police department and analyzed the surveillance video. Based on his analysis of the frames in the video, the officer opined that Petruzielo was traveling approximately 11.4 miles an hour as he drove past the scene. A defense expert refuted this conclusion, testifying that Petruzielo was traveling between 21 and 24.5 miles per hour.

[9] The statements and reenactment were recorded and played at trial. The re-enactment video is the basis for Count 4 of the indictment against Knowles.

[10] (Footnotes and punctuation omitted.) *Marlow*, 339 Ga. App. at 790-792.

Count 2,[11] and Knowles was convicted of the remaining counts and sentenced to 10 years to serve 60 days in custody, with the remainder to be served on probation. The trial court denied her subsequent motion for new trial, and this appeal followed.

1. *Sufficiency of the evidence.* Knowles argues that the evidence was insufficient to support her convictions. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[12] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[13]

---

[11] Count 2 was based on a phone call Knowles made to the detective on June 14, 2013.

[12] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[13] (Punctuation omitted.) *Marlow*, 339 Ga. App. at 792-793 (1), quoting *McClendon v. State*, 287 Ga. App. 238, 239 (1) (651 SE2d 165) (2007).

(a) *Making a false report of a crime*. OCGA § 16-10-26 provides: "A person who willfully and knowingly gives or causes a false report of a crime to be given to any law enforcement officer or agency of this state is guilty of a misdemeanor."

Knowles argues that because she did not actually use the specific words "reckless conduct" or "aggravated assault" or otherwise specifically name the crime she alleged Petruzielo committed when she first contacted police, her statements do not constitute a false report of a crime. This argument is without merit. The indictment did not allege that Knowles used any specific language, and the statute does not require it as an element of the crime.

Next, Knowles contends that the State failed to prove beyond a reasonable doubt that the report that she made to police was false. As we stated in *Marlow*,

> the jury viewed the video surveillance footage and read and heard the testimony regarding [Knowles's] statement[] to police. . . . It is the province of the jury to resolve any conflicts in the evidence and to determine the credibility of witnesses, and the fact that such conflicts may be resolved adversely to [Knowles] does not render the evidence insufficient. The evidence was sufficient to authorize the jury to determine that the State excluded all reasonable hypotheses save that of [Knowles's] guilt, and to authorize a rational trier of fact to find

6

[Knowles] guilty beyond a reasonable doubt of [making a false report of a crime].[14]

(b) *Making a false statement.* OCGA § 16-10-20 provides:

A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

(i) Knowles contends that the evidence was insufficient to support her convictions for Counts 3, 4, and 5. But as we concluded in *Marlow* and reiterated in Division 1 (a), Knowles's statements to police, as contrasted with the video surveillance footage of the incident, were sufficient to support her convictions for making false statements.[15]

---

[14] (Punctuation omitted.) *Marlow*, 339 Ga. App. at 793 (1), quoting *Banta v. State*, 282 Ga. 392, 395-396 (1) (651 SE2d 21) (2007).

[15] See *Marlow*, 339 Ga. App. at 793 (1).

(ii) Knowles further contends that the State failed to prove venue as to Count 3, which arose out of her signing a printed copy of her email at the police station on July 3. Specifically, Knowles argues that venue is proper in her location when she sent the email to the detective and that there is no evidence that the location was in Cherokee County. Knowles relies upon *Spray v. State.*[16] Her reliance, however, is misplaced and overlooks the language of the indictment in this case.

Here, Knowles was not charged with making a false statement by sending the email. Instead, Count 3 charged her with making a false statement by "providing a false written statement" to police on July 2, 2013, when she went to the Canton Police Department in Cherokee County and signed her name to and attested to the contents of a printed copy of her email. Under these circumstances, venue was proper in Cherokee County.

---

[16] 223 Ga. App. 154 (476 SE2d 878) (1996). In *Spray*, the defendant was charged with making a false statement by filling out an application and falsely attesting to its contents. The defendant argued that venue for the crime should have been in the county where the application form was sent after he signed it. We disagreed, holding that venue was proper where the defendant made the statement, not in the county to which he sent the form. See id. at 157-158 (2). Compare *State v. Johnson*, 269 Ga. 370, 372 (2) (499 SE2d 56) (1998) (holding that "venue for the prosecution of OCGA § 16-10-20 for the *use* of a false document is proper in the county in which the document was submitted for use, even if the person charged with using the false document made the document in another county") (emphasis supplied).

2. *Rule of lenity*. Knowles contends that her felony sentences for making false statements (Counts 3, 4, and 5) should be vacated and that she should be resentenced for misdemeanor making a false report of a crime. For the same reasons stated in *Marlow*,[17] we agree. Accordingly, we vacate Knowles's sentences for the felony offense of making a false statement and remand for resentencing for the misdemeanor offense of making a false report of a crime, OCGA § 16-10-24.

3. *Ineffective assistance of counsel.* Finally, Knowles contends that trial counsel was ineffective.

> To establish that [her] trial counsel was constitutionally ineffective, [Knowles] was required to prove both deficient performance by counsel and resulting prejudice. To prove deficient performance, [Knowles] had to demonstrate that counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. Because judicial scrutiny of counsel's performance must be highly deferential, the law recognizes a strong presumption that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry this burden, [Knowles] must show that no reasonable lawyer would have done what [her] counsel did, or failed to do what [her] counsel did not do. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently

---

[17] 339 Ga. App. at 794-798 (2).

9

unreasonable that no competent attorney would have followed such a course. Even if a defendant can prove that [her] counsel's performance was deficient, [s]he must also prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome. In all, the burden of proving a denial of ineffective assistance of counsel is a heavy one.[18]

(i) Knowles argues that trial counsel was ineffective by failing to call character witnesses for her at trial. But trial counsel testified that he did not call character witnesses because the case "wasn't a trial about character. It was a trial – we were up against the video. . . . [O]ur case was about perception. It was about the video that we were trying to overcome and experts." He also elected not to call them because he did not want to open the door to evidence regarding animosity between Knowles and school board members, which he thought could provide evidence of a motive for her actions.

---

[18] (Citations and punctuation omitted.) *Smith v. State*, 298 Ga. 406, 412 (3) (a) (782 SE2d 269) (2016), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

[W]hether to introduce character evidence and potentially open the door for impeachment is clearly [a question] of tactics and strategy. . . . Even assuming that trial counsel's decision not to call character witnesses on [Knowles's] behalf was ill-advised and based on an evaluation of the evidence which hindsight shows to be incorrect, we nevertheless regard that decision as being a matter of trial strategy, which, even if erroneous, does not itself constitute a denial of effective assistance of counsel.[19]

(ii) Knowles also argues that trial counsel was ineffective by failing to remind the court that Knowles had filed a demurrer. We disagree.

Prior to trial, Knowles filed a general demurrer, stating that she "demurs to said indictment on the [ground] that the same fails to adequately charge this [d]efendant with any offense against the State of Georgia."[20] At trial, Knowles's trial attorney, through trial counsel for one of the co-defendants, moved for a directed verdict as to Count 3 of the indictment. After hearing argument of counsel, the trial court denied the motion, stating:

[h]aving reviewed the authority cited by counsel and with consideration of the evidence presented in regard to the motion for a directed verdict,

---

[19] (Punctuation omitted.) *Neal v. State*, 290 Ga. 563, 566-567 (4) (722 SE2d 765) (2012).

[20] The demurrer did not specify any particular counts Knowles was challenging.

as it relates to the verbiage of Count . . . 3 . . . – that because the indictment does not allege either – make or use a false written statement but otherwise alleges that the accused provided a false written statement, the court notes that there are no – there are no demurrers filed to the form of the indictment, that there is no black letter law that the court could find and that [was] cited to the court as to that particular issue, and that is whether or not signing a previously made electronic communication is making another false written communication or whether it's using a false writing or both.

Trial counsel for Knowles did not remind the trial court that she had, in fact, filed a demurrer, and she now argues on appeal that this failure constitutes ineffective assistance of counsel. But this argument overlooks the fact that the trial court also denied the motion on the basis that there was no case law finding the language of Count 3 insufficient to charge a violation of OCGA § 16-10-20.

Again, in relevant part, OCGA § 16-10-20 prohibits a person from "mak[ing] or us[ing] any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement." Here, Count 3 charged that Knowles made a false statement in violation of OCGA § 16-10-20 by "knowingly and willfully provid[ing] a false written statement to Detective Andrew Henson." We reject Knowles's argument that by using the word "provide" as opposed to "make" or "use" the State

12

failed to allege a violation of OCGA § 16-10-20. There is no requirement that the indictment track precisely the language of the Code section, and it is clear from the wording of Count 3 that the State alleged that Knowles made a written statement and gave it to police, knowing it to be false, which constitutes a violation of OCGA § 16-10-20.

> Because the indictment was sufficient to withstand demurrer, the failure of [Knowles's] trial counsel to [remind the court that she had filed a] demurrer did not constitute deficient performance. Accordingly, [Knowles] did not demonstrate that [s]he received ineffective assistance of counsel, and the trial court did not err in denying [her] motion for new trial.[21]

*Judgment of conviction affirmed, sentence vacated and case remanded for resentencing. Andrews and Ray, J.J., concur.*

---

[21] (Footnote omitted.) *Raybon v. State*, 309 Ga. App. 365, 367 (710 SE2d 579) (2011).