**FIFTH DIVISION
REESE, P. J.,
MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 8, 2021**

# In the Court of Appeals of Georgia

A20A1861. TAYLOR v. THE STATE.

MARKLE, Judge.

Following a jury trial, Raheem Almalik Taylor was convicted of insurance fraud and making a false report of a crime. Taylor appeals from his convictions and the trial court's denial of his motion for new trial, contending that (1) his trial counsel rendered ineffective assistance by failing to (a) move for a directed verdict and (b) object to the introduction of his eviction notices; (2) the trial court erred by admitting his prior convictions into evidence; and (3) his conviction should be reversed because the responding police officer perjured himself on the stand. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that, in September 2016,

Taylor reported a burglary of his apartment.[1] When an officer arrived at the second-story apartment, Taylor acknowledged that he had waited approximately twelve hours after returning home to report that two televisions, a smart watch, a streaming device, and a pair of headphones were stolen. Taylor gave the officer the boxes for the allegedly stolen items so the officer could obtain their serial numbers. The officer verified that Taylor gave him the correct boxes for each specific item he had claimed was stolen. The officer noted that there were no signs of forced entry into the apartment, nor had it been ransacked, and Taylor stated that both the front door and the balcony door were locked when he returned home, just as he had left them. Taylor further reported that a liquor bottle had been moved and partially consumed, and the officer collected the bottle for processing. However, no identifiable fingerprints, saliva, or DNA could be retrieved from the bottle.

The assigned investigator entered the serial numbers from the boxes into a database to determine whether the stolen items had been pawned. The investigator received a "pawn hit," showing that Taylor had pawned one of the televisions four months before he had reported it as stolen. The investigator then conducted a secondary search using Taylor's identification information, and discovered that

---

[1] The telephone call to 911 was admitted into evidence and played for the jury.

Taylor had also pawned a smart watch and headphones matching the general description of the ones he had reported stolen two months prior to his burglary report. Although this "pawn hit" did not list the serial numbers for these items, the investigator explained that different pawn shops have different procedures for entering information into the database.

The investigator was aware that there had been several burglaries in Taylor's apartment complex; however, they had all occurred on the ground floor with access through a back window. Additionally, the investigator discovered that Taylor had received eviction notices in May 2016 and again in the month following the reported burglary, and the investigator explained that insurance fraud will commonly occur when a party is facing the loss of a home. The investigator then contacted Taylor's insurance company, and found that he had filed claims for the items he had reported stolen, and the insurer had reimbursed him for their replacement value.

Taylor was subsequently charged with insurance fraud and making a false report of a crime. His first trial resulted in a hung jury. On retrial, Taylor was found guilty of all counts. Taylor filed a motion for new trial, raising all of the grounds he now raises on appeal. Following a hearing, the trial court denied the motion, and this appeal followed.

3

1. Taylor first argues that trial counsel rendered ineffective assistance by failing to (a) move for a directed verdict because the State's evidence was insufficient to support his convictions, and (b) object to the introduction of his eviction notices because they were irrelevant and unduly prejudicial. We conclude he has not met his burden to show ineffective assistance of counsel.

> To succeed on a claim that counsel was constitutionally ineffective, [Taylor] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the . . . test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). Bearing these principles in mind, we address each of Taylor's claims of ineffective assistance in turn, finding no merit to either of them.

4

(a) *Failure to move for directed verdict.*

Taylor contends that counsel should have moved for directed verdict because the evidence of his guilt was insufficient. Specifically, Taylor points to the insurance analyst's testimony on cross-examination that the insurer's investigation did not reveal any evidence of fraud prior to the payment of Taylor's insurance claim for his allegedly stolen property, and that the insurer had not filed a law suit seeking to recover the payment. Taylor asserts that this testimony defeated the insurance fraud count, and therefore counsel's performance was deficient for failing to seek a directed verdict. We disagree.

In this posture, our standard of review is the same as the standard for reviewing the sufficiency of the evidence. *Range v. State*, 289 Ga. App. 727, 731 (4) (658 SE2d 245) (2008). Thus,

> we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Knowles v. State*, 342 Ga. App. 344, 346 (1) (801 SE2d 582) (2017).

OCGA § 33-1-9 (a) provides that insurance fraud is committed when a person "knowingly or willfully . . . [m]akes or aids in the making of any false or fraudulent statement or representation of any material fact or thing . . . [i]n the filing of a claim[.]"

Pursuant to OCGA § 16-10-26, "[a] person who willfully and knowingly gives or causes a false report of a crime to be given to any law enforcement officer or agency of this state is guilty of a misdemeanor."

The evidence, as recounted above, is sufficient to support Taylor's convictions. See *Knowles*, 342 Ga. App. at 346-347 (1) (a) (sufficient evidence of making a false report of a crime where jury was able to view surveillance video that contradicted the defendant's report of alleged crime); *Sallee v. State*, 329 Ga. App. 612, 615 (1) (765 SE2d 758) (2014) (sufficient evidence of insurance fraud where lawyer aided client in filing false insurance claim regarding property destroyed in a fire *after* the client sold the property). Notably, on redirect examination, the insurance analyst explained that the insurer's investigation did *not* involve an examination of the condition of Taylor's apartment following the alleged burglary, and the insurer was unaware that

6

Taylor had pawned the items on the insurance claim. The analyst further testified that it was not company policy to reopen an investigation once a claim was paid. To the extent there were any inconsistencies in the evidence, it was for the jury to determine the analyst's credibility and to resolve these inconsistencies. *Snipes v. State*, 309 Ga. 785, 788-789 (1) (848 SE2d 417) (2020).

Because the evidence was sufficient to sustain Taylor's convictions, "any motion for directed verdict would have failed, and trial counsel's failure to make such a motion thus did not constitute deficient performance." (Citation and punctuation omitted.) *Blount v. State*, 303 Ga. 608, 613 (2) (f) (814 SE2d 372) (2018); *Range*, 289 Ga. App. at 731 (4); *Owens v. State*, 324 Ga. App. 198, 202 (b) (749 SE2d 783) (2013) (where evidence is sufficient to support the convictions, a claim for ineffective assistance based on a failure to move for directed verdict fails as a matter of law).

(b) *Failure to object to the admission of evidence.*

Taylor next claims his counsel was deficient for failing to object to the admission of documents regarding two eviction proceedings against him because they

were irrelevant and highly prejudicial.[2] Specifically, Taylor claims that the first eviction proceeding was irrelevant because it resulted in a consent order, and not an eviction; and the second was irrelevant because it was filed after he reported the burglary. At the new trial hearing, trial counsel testified that he believed the eviction documents would be admitted as evidence of motive, and he deliberately chose not to object to them to avoid drawing further attention to them.

> Reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. . . . In evaluating the reasonableness of trial strategy, every effort should be made to eliminate the distorting effects of hindsight. Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed.

(Citations and punctuation omitted.) *Griffin v. State*, ___ Ga. ___ (3) (849 SE2d 191, 198-199 (3)) (2020).

We cannot say that trial counsel's strategic decision was patently unreasonable. Both of the eviction suits were filed within months of the burglary report, and thus

---

[2] Taylor also contends that counsel was deficient for failing to object to the notices because the State did not lay a proper foundation for them. This argument is unavailing because the filings from the eviction proceedings were certified by the clerk of court and thus were self-authenticating. OCGA § 24-9-902 (4).

8

were relevant to show Taylor's motive for filing a false insurance claim as a means to acquire needed funds. See *Desire v. State*, 295 Ga. 254, 256 (2) (759 SE2d 498) (2014) ("Although motive is not an essential element in proving the crimes charged, the State is entitled to present evidence to establish that there was a motive") (citations omitted). Thus, an objection would have been meritless. And, in light of the officer's testimony that fraudulent insurance claims are commonly filed when there is a danger of losing a home, it was perfectly reasonable to refrain from interposing a meritless objection in order to avoid drawing further attention to this unfavorable evidence. See *Young v. State*, 305 Ga. 92, 98 (6) (823 SE2d 774) (2019) (defense counsel's decision not to object to the State's closing argument was not unreasonable "because he did not want to draw attention to the case's most problematic facts."). As such, Taylor failed to satisfy his burden to show that trial counsel rendered ineffective assistance.

Accordingly, the trial court did not err in denying Taylor's motion for new trial based on these ineffectiveness claims.

2. Taylor next claims that the trial court erred by admitting his prior convictions because they were not relevant, and their prejudicial effect outweighed their probative value because they are dissimilar and too remote. In a related

9

enumeration of error, he argues that the trial court erred by admitting copies of his prior convictions that were not properly redacted because they showed charges for which he was not convicted. We conclude that the trial court did not abuse its discretion in admitting this evidence.

(a) Pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"),

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As we have explained, in order for "other acts" evidence to be admissible,

the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character; (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of OCGA § 24-4-403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question. In no case may evidence of other acts be admitted for the sole purpose of proving the character of the accused to show that he acted in conformity therewith. A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion.

(Citations and punctuation omitted.) *Harvey v. State*, 344 Ga. App. 761, 767-768 (2) (a) (811 SE2d 479) (2018).

Here, for the purpose of showing intent and absence of mistake or accident, the State sought to admit at trial three sets of certified court documents from New Jersey showing Taylor's guilty pleas to wrongful impersonation and credit card theft in 2005; fraudulent use of a credit card in 2008; and receiving stolen property, identity theft, and wrongful impersonation in 2009. The documents also showed charges for which Taylor was not convicted, including false statements in procuring a credit card, forgery, false report, assuming a false identity, theft by deception, and computer theft.[3] After hearing argument, the trial court found that all three prongs of the Rule 404 (b) test were satisfied, and admitted the extrinsic evidence over Taylor's objection for the purpose of establishing intent and the absence of mistake or accident. The trial court then gave a limiting instruction to the jury prior to the publication of the documents to the jury, and again during the jury charge. In his

---

[3] The dismissed charges were listed on the sentencing sheets, which were published to the jury. However, the trial court allowed only the portions of the New Jersey indictments showing the counts for which Taylor was actually convicted to be published to the jury.

11

appellate brief, Taylor challenges only the first two prongs of the Rule 404 (b) analysis as grounds for error.

(i) The other acts evidence satisfies the first prong of the Rule 404 (b) test because it was relevant to show intent and the absence of mistake or accident.[4]

Here, Taylor placed his intent in issue by pleading not guilty to the charges in the indictment. *Harvey*, 344 Ga. App. at 769 (2) (a) (i). Notably, the defense strategy was to show that Taylor was engaged in the business of purchasing and reselling electronics, and that the items he reported as stolen were not those that were found at the pawn shop. Thus, it was the State's burden to show that Taylor knowingly and willfully made false representations both in the insurance claim and to the responding officer. See OCGA §§ 33-1-9 (a); 16-10-26; see also *Harvey*, 344 Ga. App. at 768-769 (2) (a) (i).

> Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind

---

[4] Pursuant to OCGA § 24-4-401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

required for the charged and extrinsic offenses is the same, the first
prong of the Rule 404 (b) test is satisfied.

(Citation omitted.) *Harvey*, 344 Ga. App. at 768-769 (2) (a) (i).

The requisite state of mind for Taylor's prior convictions for wrongful impersonation, identity theft, and credit card theft all involved the similar intent to defraud for the purpose of obtaining a benefit. See NJSA §§ 2C:21-17 (a) (1), (4); 2C:21-6 (c) (1), (h). Accordingly, these prior convictions were relevant to show Taylor's intent to make the fraudulent misrepresentations in this case.[5] See *Harvey*, 344 Ga. App. at 769 (2) (a) (i); *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016) (prior convictions for financial identity fraud and forgery relevant to show intent for charge of impersonating a law enforcement officer).

---

[5] Although we question the similarity of the state of mind for Taylor's prior theft by receiving conviction to that of his convictions here, we discern no harm in the trial court's admission of this evidence. See *Chase v. State*, 337 Ga. App. 449, 456 (3) (b) (787 SE2d 802) (2016) ("It is a fundamental principle that harm as well as error must be shown for reversal.") (citation and punctuation omitted). The evidence showed that the serial number of the television Taylor reported stolen matched that of the one he previously pawned, that he had previously pawned other items he reported stolen, and that he had filed an insurance claim for the loss of these items. And the jury was able to consider the properly admitted evidence of Taylor's prior convictions involving an intent to defraud. See id. Because it is highly probable that the admission of the theft by receiving conviction did not contribute to the verdict, any error in admitting it was harmless. Id.

(ii) Taylor further contends that the probative value of the prior convictions was outweighed by their prejudicial effect because they were not factually similar to the crimes here and were too remote in time.

> In addressing the second prong of the test, the trial court must apply the balancing test under OCGA § 24-4-403 ("Rule 403"), which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts. The exclusion of relevant evidence under this prong, however, is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence.

(Citations and punctuation omitted.) *Harvey*, 344 Ga. App. at 769-770 (2) (a) (ii). And, "in determining the probative value of other-act evidence offered to show intent, [we] consider the prosecutorial need for the other-act evidence, its similarity to the charged crimes, and its temporal remoteness." *Strong v. State*, 309 Ga. 295, 310 (2) (d) (1) (845 SE2d 653) (2020).

As discussed in Division 2 (a) (i), the prosecutorial need for the other acts evidence to establish Taylor's intent was strong in light of the theory of defense that

14

Taylor did not intend to commit the crimes as charges. Compare *Arrington v. State*, 355 Ga. App. 361, 365 (a) (844 SE2d 256) (2020) (unfair prejudice of prior acts evidence outweighed its probative value where intent was not at issue); *Jackson v. State*, 306 Ga. 69, 78 (2) (b) (ii) (829 SE2d 142) (2019) (prejudicial effect of other acts evidence outweighed its probative value where there was a "lack of any real prosecutorial need.").

Although the prior convictions for wrongful impersonation, identity theft, and credit card theft, as set forth in the New Jersey indictments, are not factually similar to the current charges, each one involved deceit as a means to gain a pecuniary benefit. As such, they were probative to the assessment of Taylor's intent to commit the crimes as charged here. See *Chase*, 337 Ga. App. at 455 (3) (a) (probative value of other acts evidence outweighed any prejudice where both the instant crime and the other crimes involved defendant's efforts to obtain or use information through misrepresentation); see also *Kirby v. State*, 304 Ga. 472, 484 (4) (a) (i) (819 SE2d 468) (2018) ("When other act evidence is introduced to prove intent, however, a lesser degree of similarity between the charged crime and the extrinsic evidence is required.") (citation, punctuation, and emphasis omitted).

15

Nor can we say that Taylor's prior convictions were too remote to be probative. There is no bright-line test with regard to the temporal proximity of other acts evidence; rather, this issue is determined on a case-by-case basis. *Harvey*, 344 Ga. App. at 770 (2) (a) (ii). And we have affirmed the admission of other acts evidence that occurred 24 years earlier than the crime at issue. Id. Here, the earliest of Taylor's prior offenses occurred in 2004, twelve years prior to the offenses here; and the most recent of the prior offenses occurred in 2008, eight years prior to the offenses here. Importantly, however, Taylor was incarcerated from approximately 2008 to 2013–just three years prior to the crimes here. See *Kirby*, 304 Ga. at 484 (4) (a) (i) ("the prior crime need not be very recent, especially where a substantial portion of the gap in time occurred while the defendant was incarcerated.") (citation and punctuation omitted). Because the prosecutorial need was great, and the similarity of the other acts was significant, we cannot say that the trial court erred in finding the prior convictions were not too remote to be unduly prejudicial. See *Harvey*, 344 Ga. App. at 771 (2) (a) (ii).

Moreover, the trial court mitigated any unfair prejudice by cautioning the jury, both when the evidence was tendered and again during the final charge, that the prior crimes evidence could only be considered for the limited purpose of establishing

16

intent. *Harvey*, 344 Ga. App. at 771 (2) (a) (ii). As such, the trial court properly determined that the probative value of the prior convictions was not outweighed by their prejudicial effect. We therefore conclude that the trial court did not clearly abuse its discretion in admitting Taylor's prior convictions.

(b) We are also not persuaded by Taylor's contention that the trial court erred in admitting the other acts evidence that was not properly redacted because it listed offenses for which he was not convicted. First, he cites to no authority for this enumeration, and we may therefore deem this claim abandoned. Court of Appeals Rule 25 (c) (2). Nevertheless, as we have previously explained, "the admission of other acts under OCGA § 24-4-404 (b) is not limited to conduct resulting in a conviction." *Hamlett v. State*, 350 Ga. App. 93, 100 (2) (828 SE2d 132) (2019). Moreover, in its case in chief, the State drew the jury's attention only to the offenses for which Taylor was actually convicted, making no mention of the dismissed charges. And, as discussed above, the trial court mitigated any unfair prejudice by issuing the limiting instructions. *Harvey*, 344 Ga. App. at 771 (2) (a) (ii). Thus, the trial court did not err in admitting this evidence.

3. Finally, Taylor contends his convictions must be reversed because the responding officer committed perjury. This argument is meritless.

17

Outside of the presence of the jury, the State revealed that the responding officer had since resigned from his position due to an allegation that he had committed domestic violence. The trial court cautioned Taylor's trial counsel against delving into this topic during cross-examination to avoid an impermissible attack on the witness's character, as the alleged battery did not go to his character for untruthfulness. Nevertheless, during cross-examination, Taylor's counsel inquired into the reason for the former officer's departure from law enforcement, and the officer responded, "[t]o go to work for the railroad."

Even assuming that the witness perjured himself with this response, a finding we do not make, Taylor cannot show that he is entitled to have his convictions set aside on this ground.

> Under OCGA § 17-1-4, we may set aside a conviction that was obtained "in consequence of corrupt and willful perjury."[6] We may do so, however, only if the witness in question was convicted of perjury and the defendant's conviction could not have been obtained without that witness's testimony.

---

[6] OCGA § 17-1-4 provides that "[a]ny judgment, verdict, rule, or order of court which may have been obtained or entered shall be set aside and be of no effect if it appears that the same was entered in consequence of corrupt and willful perjury."

*Day v. State*, 242 Ga. App. 899, 900 (3) (531 SE2d 781) (2000); see also *Whipkey v. State*, 352 Ga. App. 746, 751 (2) (835 SE2d 740) (2019) (to warrant relief under OCGA § 17-1-4, a defendant "must show that the person providing the perjured testimony has been convicted of perjury as a result of his testimony.").

Here, Taylor makes no showing that the former officer was convicted of perjury, nor that this testimony had any bearing whatsoever on the jury's verdict. Moreover, the evidence of Taylor's guilt was overwhelming. Accordingly, we decline to set aside Taylor's convictions on this ground. See *Whipkey*, 352 Ga. App. at 751 (2); *Day*, 242 Ga. App. at 900 (3).

For all these reasons, we affirm Taylor's convictions and the trial court's denial of his motion for new trial.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur.*