**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 14, 2021

# In the Court of Appeals of Georgia

A21A0389. WHITSON v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Arick Whitson guilty of making a false statement and making a false report of a crime. The trial court sentenced Whitson, but then vacated his sentence for making a false statement pursuant to the rule of lenity. Whitson filed a motion for new trial, which he amended twice. The trial court denied the motion, and Whitson appealed. On appeal, Whitson argues that the trial court erred in admitting other acts evidence, and his trial counsel was ineffective for failing to object to the admission of some of that evidence. Whitson further argues that it was plain error for the trial court to send his indictment out with the jury because the indictment erroneously displayed that he had pled guilty to certain counts. We find no reversible error and affirm Whitson's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

*Knowles v. State*, 342 Ga. App. 344, 346 (1) (801 SE2d 582) (2017) (citations omitted).

The record shows that in August 2016, the victim ended her four-year relationship with Whitson. At that point, Whitson began harassing the victim through e-mails and social media. In addition, the victim's friends, family, coworkers, and manager began receiving messages from "fake" e-mail and Facebook accounts purporting to be the victim's. The e-mails included nude photographs of the victim taken by Whitson and defamatory messages, one of which included a subject line reading, "Never attempt to humiliate your mate." The Facebook account included a caption underneath the victim's name that read, "I love to have sex all the time, I play hard to get but I am not." Whitson later apologized in an e-mail for sending the nude photographs, claiming another romantic interest inadvertently gained access to the photos and disbursed them.

On October 14, 2016, the victim filed a police report in Clayton County concerning the harassing e-mails and fake Facebook account, but no criminal action was initiated because Clayton County did not have jurisdiction. The victim subsequently petitioned for and received a temporary protective order in Henry County against Whitson based on his threatening actions.[1]

On October 24, 2016, four days after the victim petitioned for the temporary protective order, Whitson filed a police report alleging that the victim had committed armed robbery against him and aggravated assault against his employee the night before. According to the Henry County police officer, Whitson showed up at the police station with a pre-typed statement. Both the officer and the detective on the case testified that it was the only time in their careers that someone had come into the police station with a pre-typed statement. It was also unusual for the victim of an armed robbery to not report the crime immediately. Whitson alleged that the victim came to his restaurant, demanded his cell phone, pointed a pistol at him, pulled its trigger, took the cell phone, and drove off. Whitson claimed his employee witnessed

---

[1] The victim testified that, at some point, Eric Smith changed his name to Arick Whitson.

the armed robbery and was similarly threatened by the victim. Whitson completed a handwritten statement while at the station.

Later that same day, Whitson returned to the station with his employee, who submitted both a pre-written, signed statement and a contemporaneous statement at the police station indicating that the victim assaulted and pointed a gun at her. However, the employee later told police that her initial statement was not true, and she gave two statements recanting her initial statement. At trial, the employee testified that Whitson "told [her] the things to say[]" at the police station, but she did not witness anything happen. According to the employee, she helped Whitson because she needed her job. She also claimed that Whitson actually wrote her statement because she cannot spell well, and she never read the statement before she signed it because she cannot read well. Whitson subsequently fired the employee, who later pled guilty to filing a false report of a crime.

Also on October 24, 2016, Whitson filed for and received a temporary protective order against the victim, but his petition did not reference the armed robbery allegation.

On November 4, 2016, the victim noticed Whitson following her throughout the day, so she drove to the police department and reported Whitson's violation of the

4

court's restraining order. On this same date, Whitson filed criminal charges and a motion for contempt against the victim, claiming she followed him in violation of his temporary protective order. Whitson also went to the detective investigating the armed robbery charge and gave him another statement about the armed robbery, including the fact that the victim was following him.

Around this same date, the victim learned of Whitson's allegation that she had committed armed robbery and assault, and she gave a statement to the detective investigating the case. According to the victim, she had difficulty writing the statement because the incident never happened. On November 7, 2016, the detective applied for an arrest warrant for the victim, but the magistrate judge denied the warrant. Upon further investigation, and after the employee recanted her initial statement, the detective applied for arrest warrants for both Whitson and the employee.

On November 11, 2016, Whitson proposed that he and the victim both drop their restraining orders. The victim agreed and dismissed her petition. However, Whitson then began mailing and e-mailing the victim again. The victim received more than 30 e-mails from Whitson throughout December of 2016, and even more e-mails in January of 2017, despite her repeated requests that Whitson stop contacting her.

5

Not a single e-mail accused the victim of armed robbery. The e-mails became more aggressive and offensive, and in the first half of February 2017, family, friends, and colleagues began receiving additional communications from Whitson.

On February 16, 2017, the victim applied for and received a stalking temporary protective order. A week later, Whitson filed for and received his own temporary protective order. The next day, Whitson also filed a civil suit against the victim, accusing the victim of various crimes, torts, and breach of contract.

Following a March 2017 hearing, where the victim testified that because of Whitson's actions she moved, changed her personal phone number twice, and disconnected a voice number she used for her business as a hair stylist, the victim was granted a stalking 12-month protective order, and Whitson's request for a protective order was dismissed the next day.

The State further introduced evidence that Whitson had waged a similar campaign of intimidation and false accusations against a former girlfriend. The former girlfriend testified that she dated Whitson from 2005 to March 2009. After the former girlfriend broke up with Whitson, he sent her and her family, friends, and coworkers unsolicited, derogatory, and sexually explicit e-mails and letters harassing her. The former girlfriend testified that she sought a restraining order against

6

Whitson, and her employer hired a police officer to provide added security at work for her protection. She further testified that Whitson falsely accused her of holding him at gunpoint in a parking lot, told the Department of Family and Children Services that she ran a prostitution ring and forced her children into prostitution, told school officials that her children were enrolled illegally in that county, and told her company she was embezzling company funds. Whitson's claims were ultimately found to be untrue, and Whitson was convicted in 2011 of stalking his former girlfriend.

Whitson then took the stand and testified that on October 23, 2016, the victim came to his business, displayed a gun, pointed the gun at him, took his cell phone, and pushed his employee. He also testified that after his employee told police about the victim's armed robbery and assault, she left the police station crying, telling him that the police forced her to change her story. A phone audio-recording of this conversation between Whitson and his employee was played for the jury.

The jury ultimately found Whitson guilty beyond a reasonable doubt of making a false statement that the victim robbed him at gunpoint to Henry County police on October 24, 2016, as alleged in the indictment.[2] The jury also found him guilty

---

[2] OCGA § 16-10-20 provides: "A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false

beyond a reasonable doubt of making a false report of the crime of armed robbery to an officer with the Henry County Police Department on October 24, 2016, as alleged in the indictment.[3] This appeal followed.

1. Whitson first asserts that the trial court erred in admitting purported other acts evidence and that his trial counsel was ineffective for failing to object to some of the other acts evidence. We find no merit in either claim.

The record shows that the State filed a motion to admit evidence of other crimes or occurrences under OCGA § 24-4-404 (b). Specifically, the State argued that acts Whitson committed against his former girlfriend after she broke up with him – which included harassing e-mails and letters sent to friends, family, and coworkers, false allegations against the girlfriend, and actions leading to Whitson's stalking conviction – were admissible to show Whitson's plan, motive, intent, knowledge, and

---

writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both."

[3] OCGA § 16-10-26 provides: "A person who willfully and knowingly gives or causes a false report of a crime to be given to any law enforcement officer or agency of this state is guilty of a misdemeanor."

absence of mistake. The acts demonstrated Whitson's controlling nature, the way he acted following a break up, and the lengths to which he would go to ruin a former girlfriend's life after she broke up with him. In an abundance of caution, the State also sought permission to introduce other acts Whitson committed against the victim, including, inter alia, Whitson's filing of a temporary protective order for stalking a week after the victim filed one and his filing of a civil complaint against the victim one day later, both of which were later dismissed, to demonstrate Whitson's use of the legal system as a mechanism for revenge.

Following a hearing, the trial court ruled that the other acts Whitson performed against his former girlfriend were admissible to show intent and motive, principally demonstrating the issue of control. The trial court further admitted the other acts Whitson performed against the victim, finding they were intrinsic and relevant to motive.[4]

---

[4] The trial court excluded admission of an incident where Whitson filed a police report against a former employee allegedly in retaliation for the former employee threatening to sue Whitson for failing to pay her for work performed. The trial court also excluded admission of an incident where Whitson filed a petition for stalking and criminal trespass against the victim's son as an alleged attempt to seek revenge for the victim petitioning for a stalking protective order. Also excluded was a false writing indictment from 2006 where Whitson told the Henry County Board of Education that someone resided with him so she could attend school in Henry County when, in fact, the individual did not reside with him.

(a) *Admission of other acts committed against the former girlfriend*. Whitson maintains that the trial court abused its discretion in admitting the testimony of Whitson's former girlfriend for purposes of showing motive and intent to commit the offenses of making a false statement and falsely reporting that the victim in this case committed armed robbery. We disagree.

OCGA § 24-4-404 (b) prohibits the use of other acts evidence to show an accused's propensity to commit a crime. Nevertheless, the statute notes that such evidence may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b). The State is required to satisfy a three-part test before other acts evidence is admissible for these proper purposes, including a showing that

> (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character; (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of OCGA § 24-4-403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.

*Taylor v. State*, 358 Ga. App. 773, 778 (2) (a) (856 SE2d 368) (2021) (citation and punctuation omitted). "A trial court's decision to admit other acts evidence will be

10

overturned only where there is a clear abuse of discretion." Id. (citation and punctuation omitted).

Here, Whitson challenges only the first two prongs of the OCGA § 24-4-404 (b) analysis.

(i) We turn first to whether Whitson's former girlfriend's testimony of extrinsic acts was relevant to the issues of Whitson's intent and motive to make a false statement and a false report of a crime against the victim in this case. We conclude that the evidence was both relevant and admissible.

First of all, contrary to Whitson's assertion, intent was placed in issue in this case. Whitson argues that he never contested the element of intent because he admitted that he intentionally reported the armed robbery to Henry County police. However, the element of intent at issue is not Whitson's intentional reporting of the crime, but his intention to make a *false* statement and a *false* report of a crime. Whitson placed his intent in issue by pleading not guilty to the charges in the indictment, thereby placing the burden on the State to show that he knowingly and willfully made false representations to Henry County police officers on October 24, 2016. See *Taylor*, 358 Ga. App. at 779 (2) (a) (i); see also OCGA §§ 16-10-20, 16-10-26.

11

This Court has adopted the following analysis for the issue of intent:

> Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

*Taylor*, 358 Ga. App. at 779 (2) (a) (i) (citation and punctuation omitted). Because Whitson's actions in harassing his former girlfriend after she broke up with him – which ultimately resulted in Whitson making false allegations against her – involved the same mental state as his actions in harassing the victim after she broke up with him – which ultimately resulted in Whitson allegedly making false allegations against the victim – the extrinsic evidence testified to by Whitson's former girlfriend was relevant to establish intent. Both involved an intent to harass and falsely accuse a former girlfriend as a means of retaliation after she broke up with him.

Whitson's former girlfriend's testimony also was relevant to establish Whitson's motive in this case. "Motive has been defined as the reason that nudges the will and prods the mind to indulge the criminal intent." *Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015) (citation and punctuation omitted). In this case, the former girlfriend's testimony was relevant to motive because it demonstrated the lengths Whitson would go to when a girlfriend broke up with him, including using

12

the legal system, harassing letters, and false accusations as a means to control, harass, intimidate, and exact revenge against an ex-girlfriend who was unwilling to reconcile.

(ii) We further are satisfied that the trial court did not abuse its discretion in determining that the probative value of the former girlfriend's testimony, demonstrating actions virtually identical to those Whitson employed against the victim (a former girlfriend) in this case, was not substantially outweighed by its prejudicial effect. Under OCGA § 24-4-403,

> [r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"The exclusion of relevant evidence under this prong . . . is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence." *Taylor*, 358 Ga. App. at 780 (2) (a) (ii) (citation and punctuation omitted). "And, in determining the probative value of other acts evidence offered to show intent, we consider the prosecutorial need for the other acts evidence, its similarity to the charged crimes, and its temporal remoteness." Id. at 780-781 (2) (a) (ii) (citation and punctuation omitted).

13

As Whitson points out in his appellate brief, "the evidence boiled down to the credibility of [the victim], her daughter, [his former employee,] and [Whitson.]" Accordingly, the prosecutorial need for the other acts evidence to establish Whitson's intent was strong in light of Whitson's defense that the victim committed the armed robbery and he did not falsely accuse her. The State's theory of the case – that Whitson falsely accused the victim of armed robbery as a means to control, harass, and intimidate her after she broke up with him – would lack context and seem much less believable without a showing as to why Whitson would falsely accuse the victim of armed robbery. Not only were Whitson's actions against his former girlfriend factually similar, but they culminated in false accusations as a means of retaliation for the break up and the filing of a motion for a restraining order. As such, they were probative to the assessment of Whitson's intent and motive to commit the crimes as charged here. See *Taylor*, 358 Ga. App. at 781 (2) (a) (ii).

We also do not find that Whitson's actions against his former girlfriend were too remote to be probative. "There is no bright-line test with regard to the temporal proximity of other acts evidence; rather, this issue is determined on a case-by-case basis." *Taylor*, 358 Ga. App. at 781 (2) (a) (ii) (citation omitted). Because the

14

prosecutorial need was great, and the similarity of the other acts evidence significant, the other acts were not too remote to be unduly prejudicial. Id.

"Moreover, the trial court mitigated any unfair prejudice by cautioning the jury, both when the evidence was tendered and again during the final charge, that the [other acts] evidence could only be considered for the limited purpose of establishing intent [and motive]." *Taylor*, 358 Ga. App. at 781-782 (2) (a) (ii).

Whitson has failed to demonstrate that the trial court abused its discretion in admitting the former girlfriend's other acts testimony.

(b) *Admission of other acts committed against the victim.* Whitson asserts that the trial court abused its discretion in admitting evidence of other acts committed against the victim in this case for purposes of demonstrating motive under OCGA § 24-4-404 (b). We disagree.

"Evidence intrinsic to the charged offense is admissible and not subject to the limitations and prohibition on 'other acts' evidence found in OCGA § 24-4-404 (b)." *Leslie v. State*, 355 Ga. App. 244, 255 (6) (842 SE2d 550) (2020). Evidence is admissible as intrinsic evidence when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary

to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." Id. (citation and punctuation omitted).

> [E]vidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. . . . [E]vidence of other acts is "inextricably intertwined" with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. And this sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue.

*Williams v. State*, 302 Ga. 474, 485-486 (IV) (d) (807 SE2d 350) (2017) (citations and punctuation omitted).

With these principles in mind, we reject Whitson's argument that the trial court erred in allowing the victim to testify about Whitson's e-mails, legal filings, and other acts that occurred between Whitson and the victim both leading up to and following Whitson falsely accusing the victim of armed robbery. "The challenged evidence plainly pertained to the chain of events in the case and was linked by time and circumstance with the charged crimes, making the information necessary to complete the story for the jury." *Williams*, 302 Ga. App. at 486 (IV) (d). Specifically, the intrinsic acts Whitson committed against the victim demonstrated his motive to

16

escalate harassment after the victim broke up with him and filed for protective orders, including his use of legal and social means as retaliation, all of which culminated in Whitson falsely accusing the victim of armed robbery.

In addition, "although the evidence may have incidentally placed [Whitson's] character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice under these circumstances." *Williams*, 302 Ga. at 487 (IV) (d). Accordingly, based on the circumstances, the trial court did not abuse its discretion in admitting the victim's testimony of Whitson's intrinsic acts to prove motive.

(c) *Ineffective assistance of counsel*. Whitson argues that his trial counsel was ineffective for failing to object to some of the OCGA § 24-4-404 (b) evidence testified to by his former girlfriend and the victim. We find no abuse of discretion in the trial court's finding that Whitson's trial counsel rendered effective assistance.

To succeed on a claim that trial counsel rendered ineffective assistance, Whitson was required to show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Knowles*, 342 Ga. App. at 348 (3). "To prove deficient performance, [Whitson] had to demonstrate that counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." Id.

17

And to prove that he was prejudiced by the performance of his lawyer, [Whitson] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Lupoe v. State*, 300 Ga. 233, 240 (2) (794 SE2d 67) (2016) (citation and punctuation omitted). "Either the performance or the prejudice prong of the ineffectiveness inquiry need not be proven if the defendant fails to prove the other prong." *Easley v. State*, 352 Ga. App. 1, 8 (3) (833 SE2d 591) (2019).

According to Whitson, his trial counsel rendered ineffective assistance of counsel by not objecting to certain hearsay evidence offered by both his former girlfriend and the victim, including false allegations he made to others about his former girlfriend and a judge's rejection of Whitson's petition for a temporary restraining order and petition for a temporary protective order against the victim. Whitson, however, has failed to meet his burden of demonstrating ineffective assistance of counsel.

First of all, as explained in Divisions (1) (a) and (b), the trial court did not err in admitting the other acts evidence. "Consequently, [Whitson's] trial counsel cannot be deemed ineffective for failing to properly object to this evidence." *Easley*, 352 Ga. App. 10 (3) (b). "The failure to make a meritless motion or objection does not provide

a basis upon which to find ineffective assistance of counsel." *Lupoe*, 300 Ga. at 246 (8) (citation and punctuation omitted); accord *Hardin v. State*, 344 Ga. App. 378, 386 (1) (e) (810 SE2d 602) (2018).

Second, Whitson alleges in his appellate brief that his trial counsel was ineffective for failing to object to a number of purported instances of hearsay with respect to his former girlfriend's testimony. However, Whitson raised only one instance of hearsay with respect to his former girlfriend in his motion and amended motions for new trial: he asserted that his trial counsel was ineffective for failing to object to testimony that he held his former girlfriend at gunpoint. Whitson therefore has waived consideration of any other purported instances of ineffective assistance of counsel based on counsel's failure to object to hearsay with respect to Whitson's former girlfriend. See *Elkins v. State*, 306 Ga. 351, 362 (4) (b) (830 SE2d 217) (2019) ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived.") (punctuation omitted); accord *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008) (failure to raise ineffective assistance claim in trial court constitutes waiver).

Third, other than citing to the definition of hearsay, OCGA § 24-8-801 (c), Whitson does not include in his appellate brief any case law or argument in support of his cursory assertions that certain testimony constituted hearsay. Thus, he has failed to establish that any complained of statements constituted hearsay or that trial counsel's performance was professionally deficient in failing to object to the complained of statements. See *Lupoe*, 300 Ga. at 240 (2).

Finally, Whitson has failed to demonstrate any prejudice as a result of the introduction of the complained of statements, so his ineffectiveness claim also fails in this regard. See *Lupoe*, 300 Ga. at 240 (2). Even without the purported hearsay, the State presented other evidence demonstrating Whitson's intent to file a false statement and false report of a crime. Accordingly, Whitson has failed to show a reasonable probability that, but for any error by trial counsel in failing to object to a few instances of purported hearsay testimony, the result of the proceeding would have been different. See id; accord *Montgomery v. State*, 353 Ga. App. 843, 847 (3) (840 SE2d 66) (2020).

Accordingly, the trial court did not abuse its discretion in finding that Whitson failed to demonstrate ineffective assistance of counsel.

2. Whitson next asserts that the indictment sent out with the jury erroneously displayed on its face that Whitson had pled guilty to certain counts, which was "devastating to [his] liberty and unlawfully washed away [his] presumption of innocence[.]" We find no reversible error.

The record shows that Whitson and his former employee were charged in a three-count indictment with offenses surrounding the armed robbery and assault charges made against the victim on October 24, 2016: count one charged the former employee with making a false statement, count two charged Whitson with making a false statement, and count three charged Whitson with making a false report of a crime. Page four of the indictment indicates that Whitson pled not guilty on December 19, 2017, and his former employee pled not guilty on January 2, 2018. However, to the side on page four, the indictment erroneously indicates that on May 2, 2018, Whitson pled guilty to counts one and two. Whitson's name is written and then crossed off, his former employee's first name is started and then crossed off, and Whitson's name again is written. It is clear from the indictment, however, that count one pertained to Whitson's former employee, and the former employee testified at trial that she pled guilty. It is also clear from the indictment that counts two and three pertained to Whitson and that he was on trial for those charges. In fact, the verdict

21

form completed by the jury specifically finds Whitson guilty of "Count 2. Making a False Statement" and "Count 3. False Report of a Crime[.]"

Moreover, in the instruction to the jury, the trial judge read the complete indictment, including all three counts. The judge then informed the jury: "The defendant has entered a plea of not guilty to this indictment. The indictment and the plea form an issue that you are to decide. Neither the indictment nor the plea of not guilty should be considered as evidence." The judge further instructed the jury that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." And, "[e]vidence does not include the indictment, the plea of not guilty, opening or closing remarks of the attorneys, or questions asked by the attorneys." The judge also charged that "[t]he defendant is on trial for the offenses charged in this bill of indictment only and not for any other acts, even though such acts may incidentally be criminal and may have resulted in conviction." At the end of the instruction, the trial judge once again read the counts in the indictment and gave the jury its choices regarding the form of the verdict. The judge then sent the jury out for deliberations, but told them not to begin until they received the indictment and the evidence that had

22

been admitted in the case. Both counsel were given an opportunity to review the indictment, and no objection was made.

Whitson acknowledges that his trial counsel did not object to the indictment or the notations on the indictment, but argues that this Court, nonetheless, should apply the plain error analysis and reverse his convictions. Plain error review, however, is not available for this issue. As the Supreme Court of Georgia recently has held, plain error review in Georgia

> is limited to the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), and, for cases tried after January 1, 2013, with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the court. OCGA § 24-1-103 (d).

*Miller v. State*, 309 Ga. 549, 552 (2) (847 SE2d 344) (2020) (citation omitted); accord *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020). Absent a specific provision by the General Assembly, neither this Court nor the Supreme Court extend plain error analysis to other claims of error. *Miller*, supra; *Keller*, supra. Accordingly, the lack of a contemporaneous objection to any notations on the indictment waives appellate review, and this claim presents no basis for reversal. See *Kendricks v. State*, __ Ga. App. __, __ (2), n. 4 (855 SE2d 652) (2021).

3. In a one-sentence argument, Whitson asserts that the cumulative effect of the trial court's wrongful admission of the other acts evidence, coupled with the allegedly improper presentation of a guilty plea on the indictment, warrants reversal of his sentence. "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel—at least where those errors by the court and counsel involve evidentiary issues." *Kendricks*, __ Ga. App. at __ (4) (citation and punctuation omitted). As discussed in Division 1, however, the trial court did not err in admitting the other acts evidence from Whitson's former girlfriend and the victim in this case, and Whitson's trial counsel, therefore, did not err in failing to object to the evidence. In addition, as discussed in Division 2, Whitson waived any argument regarding notations written on the indictment submitted to the jury. Accordingly, Whitson's claim of cumulative error fails.

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur.*